# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

IN THE MATTER OF THE SEIZURE OF:

**2018 JEEP CHEROKEE LATITUDE
TECH CONNECT FWD VIN:
1CPJLCB6JD621473, WITH ALL
APPURTENANCES AND ATTACHMENTS
THEREON**

**APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT**

**CASE NUMBER:** 2:19mj215-SMD

**I, MARCUS L. SHUMACK, being duly sworn, depose and say:**

I am a Senior Special Agent with the United States Secret Service (USS), and have reason to believe that there is now certain property which is subject to forfeiture to the United States, namely:

a 2018 Jeep Cherokee Latitude Tech Connect FWD, VIN: 1CPJLCB6JD621473, with all appurtenances and attachments thereon,

which is subject to seizure and forfeiture to the United States pursuant to Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 853(f), as property which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1344 (Bank Fraud).

**Continued on the attached sheet and made a part hereof.**     **X** Yes  ___ No

_____
**Signature of Affiant**

**Sworn to before me, and subscribed in my presence**

July 11, 2019
_____     at     Montgomery, Alabama
**Date**                                              **City and State**

STEPHEN M. DOYLE
United States Magistrate Judge          _____
**Name and Title of Judicial Officer**     **Signature of Judicial Officer**

IN THE UNITED SATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN THE MATTER OF THE SEIZURE OF:

Case No.: **2:19mj 215-SMD**

2018 JEEP GRAND CHEROKEE ALTITUDE 4x2,
VIN: 1C4RJEAG4JC391957 WITH ALL
APPURTENANCES AND ATTACHMENTS
THERON

2018 JEEP CHEROKEE LATITUDE TECH CONNECT
FWD, VIN: 1C4PJLCB6JD621473, WITH ALL
APPURTENANCES AND ATTACHMENTS
THERON

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEIZURE WARRANT

I, Marcus L. Shumack, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Senior Special Agent with the United States Secret Service, and have been

a Special Agent since 2000. I am currently assigned to the U.S. Secret Service, Montgomery

Resident Office. I investigate violations of federal criminal laws, including 18 U.S.C. §§ 371, 875,

1028, 1028A, 1029, 1030, 1341, 1343, 1344, 1349, 1832, and 1956. I have participated in a variety

of fraud-related investigations, ranging from simple, single-party investigations to complex

conspiracies. Pursuant to 18 U.S.C. § 3056, I am authorized to investigate this matter, obtain

search and seizure warrants, and make arrests. Being duly sworn, I depose and state that the

information presented in this affidavit is true and correct to the best of my knowledge and belief.

2.      This affidavit contains facts from which the Court may find probable cause for the

issuance of a seizure warrant. Based on the facts and circumstances set forth, I submit there is

probable cause to believe that the vehicle described below is subject to civil and criminal seizure

and forfeiture, as property constituting or traceable to proceeds of bank fraud in violation of 18 U.S.C. § 1344.

3.    This affidavit is not intended to include every fact or matter observed by me or known by law enforcement concerning this investigation. The information is based on my personal observations during the course of my investigation, information conveyed to me by other law-enforcement officials, and my review of records, documents, and other physical evidence obtained during this investigation.

4.    I am currently conducting an investigation that is focusing on Montreal Holley and his unauthorized use of a Regions Bank customer account.

## PROPERTY TO BE SEIZED

5.    This affidavit is made to obtain a seizure warrant for the following properties:

**2018 Jeep Grand Cherokee Altitude 4X2, VIN 1C4RJEAG4JC391957;**
**2018 Jeep Cherokee Latitude Tech Connect FWD,**
**VIN:1C4PJLCB6JD621473**

## LEGAL AUTHORITY TO SEIZE

6.    Based on my experience and the information contained in the subsequent paragraphs, I have probable cause to believe the personal property described in paragraph five (5) is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981 and 18 U.S.C. § 982, because the property constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344 (Bank Fraud).

7.    A person commits bank fraud, pursuant to 18 U.S.C. § 1344, if they have devised or are intending to devise any scheme or artifice to obtain the monies, funds, credits, assets, securities, or other property owned by, or under the custody and control of, a financial

2

institution, by means of false or fraudulent pretenses, presentations, or promises, for the purpose of executing such scheme or artifice.

8.      18 U.S.C. § 981(a)(1)(C) provides for the civil forfeiture of any property, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense.  18 U.S.C. §§ 1956(c)(7) and 1960(1) define both bank fraud and wire fraud as a "specified unlawful activity" under Section 981(a)(1)(C).  18 U.S.C. § 981(a)(1)(D) provides for the civil forfeiture of any property, which is traceable to the gross receipts obtained, directly or indirectly, from a violation of wire fraud, where the violation involves fraud affecting a financial institution.  18 U.S.C. § 982(a)(2) provides for the criminal forfeiture of any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of wire and bank fraud affecting a financial institution.

9.      Additionally, based on my training, I know that property subject to forfeiture is subject to civil seizure pursuant to 18 U.S.C. § 981(b) and criminal seizure under 21 U.S.C. § 853(f).

## **JURISDICTION**

10.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and authorized pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is a District Court of the United States that has jurisdiction over the offense being investigated.

11.     18 U.S.C.§ 981(b)(3) provides that warrants may be executed in any district in which the property is found.

3

## PROBABLE CAUSE FOR SEIZURE

12.     On December 20, 2018, Regions Investigator Chris Hudgins contacted your affiant regarding two investigations into Montreal Holley (hereafter "Holley"), a local Branch Manager for Regions Bank, for possible embezzlement of approximately $313,448.83 from now-deceased Regions Bank customer Ellen Conley (hereafter "Conley"). Based on my review of the records and other evidence obtained in this investigation, I submit that there is probable cause to believe that, Holley, knowingly and fraudulently used funds from Conley's bank account to pay-off automobile loans for himself and a friend, Dominque Kelly.

a)     **Online transfer to Ally Bank in the amount of $37,081.19 to pay off loan number 673-9279-08732 in the name of Montreal Holly and Langston Holly secured by a 2018 Jeep Grand Cherokee Altitude 4X2, VIN 1C4RJEAG4JC391957;**

13.     On December 21, 2018, during a post-Miranda interview with Investigator Hudgins and me, Holley related that he and Conley talked about his life and that he told her he had a few debts. Holley said Conley told him he was doing the work of a CPA and should be paid commensurate to that role. According to Holley, he told Conley he was just trying to help her. Holley said Conley told him, "What is mine is yours." Holley said he initially refused Conley because it was a conflict of interest. Holley claimed he verified everything - transfers and payments - with her verbally. He also claims she told him to "take what he needs."

14.     Holley stated that he paid off his car for approximately $37,000.00. He said his car is a Jeep Grand Cherokee Altitude Edition. Holley claimed to have Conley's verbal permission and that Conley's nurses would have witnessed all of his conversations with Conley.

15.     In response to a subpoena, Ally Bank documentation showed a payment of $37,081.19 being received on November 20, 2018, from Regions Bank account number 124153087, in the name of Conley to pay off loan number 673-9279-08732. The loan application

4

shows Langston Holley as the primary applicant with Montreal Holley as the co-applicant. The loan was to purchase a 2018 Jeep Grand Cherokee Altitude 4X2, VIN: 1C4RJEAG4JC391957. The certificate of title reflects Langston Holley or Montreal Holley. The purchase date was May 31, 2018. In an earlier interview, Holley stated that Langston Holley was his grandfather.

16.     On January 07, 16, 17 and 18th, 2019, I interviewed Rosalyn Cabble (hereafter "Cabble") and four Certified Nursing Assistants (CNAs). None ever recalled Conley giving permission to anyone to access her funds for anything other than her care. All agreed that Conley was fair, businesslike, and did not involve herself in other people's personal affairs.

17.     On January 17, 2019, I interviewed CNA Latrisha Smith (hereafter "Smith") by telephone. Smith said Conley never talked about Holley. Smith said Conley's caregiver, Cabble, handled all of Conley's medical needs and grocery shopping. She further stated said Conley was very particular about money and would require Cabble to show her detailed receipts of money being spent. Conley would also question Cabble about items bought.

18.     Smith said that Conley was sleeping and generally unresponsive from December 14, 2018, until her death on December 20, 2018.

19.     On January 7, 2019, Investigator Hudgins and I interviewed CNA Stephanie Toney (hereafter "Toney") at her residence. Toney said she worked as a Certified Nursing Assistant for Conley from October, 2018, until her death on December 20, 2018. Toney said she was recruited to work from 7:00 a.m. to 3:00 p.m., Monday through Friday. She said she worked most of those days, except for an occasional day off to handle personal business.

20.     Toney stated she was present on numerous occasions when Holley came to Conley's house. Toney estimated Holley came once a week.

5

21.     Toney stated that Conley would call the bank and have checks written. Toney stated that early on, Cabble would write checks and Conley would sign them. Toney said that she heard Conley say that she only likes one person in her finances. Toney also said she overheard conversations about some bills being taken out of the account directly, and that Conley would need someone to manage her accounts.

22.     Toney said she saw and heard Cabble call Holley, put the phone on speaker, and tell Holley what amounts to make the checks for. She said Holley would show up at Conley's residence with the checks in an envelope. Toney said she heard Holley tell Conley that she would need someone over her accounts, and she heard Conley respond saying that she wanted Cabble to be added to the account to pay bills. Toney estimated this occurred sometime after or around Thanksgiving.

   **b)     Purchase of cashier's check made payable to Chrysler Capital in the amount of $23,237.24 to pay off loan number 21062521 in the name of Joseph B. Kelly secured by a 2018 Jeep Cherokee Latitude Tech Connect FWD, VIN: 1C4PJLCB6JD621473;**

23.     Holley stated that he printed a cashier's check for approximately $25,000 at the request of Conley on December 3, 2018. Holley said Conley wanted the check made payable to Chrysler Capital, that Conley provided the account number and the amount of the check, but that he did not know what that payment was for. Holley said he sent the cashier's check per Conley's instructions.

24.     On February 5, 2019 I received the results of the cashier's check made payable to Chrysler Capital. This check was used to pay off loan number 21062521 in the name of Joseph B. Kelly (hereafter J. Kelly). The loan was paid off on December 6, 2018, in the amount of $23,237.24. The loan was used to finance a 2018 Jeep Cherokee Latitude Tech Connect FWD, VIN: 1C4PJLCB6JD621473.

6

25.     On February 12, 2019, I interviewed Gage McGrath, General Sales Manager for Brewbaker Motors, concerning the sales transaction information provided to me by Chrysler Capital. In an earlier interview, Holley denied any knowledge of the purpose of the cashier's check sent to Chrysler Capital on behalf of J. Kelly. I displayed the sales transaction sheet to Mr. McGrath. He reviewed the transaction, and stated Brewbaker Motors had previously employed Holley and that Holley was the salesperson for the transaction.

26.     On February 15, 2019, I interviewed J. Kelly concerning his purchase of the 2018 Jeep Latitude. He said he was not present during any of the transactions and had nothing to do with the purchase of the vehicle. He said his daughter, Dominique Kelly (hereafter "D. Kelly"), bought the car and he gave her permission to sign the paperwork in his name. He said his daughter needed a car and he was glad to help her out.

27.     J. Kelly said he made several payments in the approximate amount of $350. J. Kelly said he stopped making payments because D. Kelly's fiancé, Montreal Holley, told him that he [Holley] was going to pay off the loan. J. Kelly said he looked at the account and saw that a check had been received paying off the loan. J. Kelly said that it was his understanding that Holley was well to do and had been a professional basketball player.

28.     On February 20, 2019, I interviewed D. Kelly at the Montgomery Resident Office. She stated she was in an "on-off" relationship with Holley. She said they had been together for about a year, but she had cheated on him in January, 2018. She stated this made him angry and had precipitated a breakup although they remained friendly.

29.     D. Kelly said her parents offered to buy her a new car for her graduation from Troy University, so she went to Brewbaker Motors in February, 2018, and used Holley's Friends and Family Discount to purchase a 2018 Jeep Latitude. She said her father authorized her to use his

7

information to buy the car and that her father was making the payments while she was in graduate school.

30.    D. Kelly's father, J. Kelly, called her and said that Holley had contacted him and said he wanted to pay off the loan on her car. She said she did not want this, but since her father was making the payments, it was between him and Holley.

31.    On March 12, 2019, I reviewed Conley's bank statements.   June 23 - December 21, 2018.  I noted that the mailing address on both main accounts was changed from Conley's home address at 3321 Rosa L. Parks Ave, Montgomery, Alabama 36105 to the Regions Bank branch where Holley worked located at 3720 Norman Bridge Road, Montgomery, Alabama 36105. This change occurred between September 2018 and November 2018, just prior to the time period during which the pay-offs for the two Jeeps were made.  Based on my personal experience and training, I know that suspects will often change the address of bank accounts to prevent the owner from discovering fraudulent transactions.

## CONCLUSION

Based on the evidence obtained in this investigation, I believe Holley knowingly and intentionally fraudulently obtained cash from the accounts of Conley, then used that cash to purchase, and to maintain the property identified in paragraph 5. Therefore, the property is subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(b), 982 and 21 U.S.C. § 853(f) because the property constitutes proceeds traceable to violations of 18 U.S.C. § 1344.  I request that the Court issue the proposed seizure warrant because there is probable cause to believe violations of 18 U.S.C. § 1344 (Bank Fraud) have occurred in the Middle District of Alabama.

Respectfully submitted,

MARCUS SHUMACK
Senior Special Agent
United States Secret Service

Subscribed and sworn before me on
July 11, 2019

STEPHEN M. DOYLE
UNITED STATES MAGISTRATE JUDGE

9